UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - -x

MERCK & CO., INC. and                    :
MSD TECHNOLOGY, L.P.,
                                         :
                Plaintiffs,                        **OPINION**
                                         :
        - against -                               05 Civ. 3650 (DC)
                                         :        05 Civ. 3696 (DC)
MEDIPLAN HEALTH CONSULTING, INC.,                 05 Civ. 3698 (DC)
d/b/a/ RXNORTH.COM,                      :        05 Civ. 3699 (DC)
                                                  05 Civ. 3700 (DC)
                Defendant.       :        05 Civ. 3701 (DC)

- - - - - - - - - - - - - - - - - -x

        AND RELATED CASES.       :

- - - - - - - - - - - - - - - - - -x


**APPEARANCES:**   (See last page)


**CHIN, D.J.**

        In these six related cases, defendants operate Canadian
online pharmacies.  Through interactive websites, they offer for
sale to U.S. consumers generic versions of plaintiffs' popular
cholesterol medication, Zocor.  In listing their products,
certain defendants use plaintiffs' trademark ZOCOR, identifying
their products as "generic ZOCOR" or some variation thereof.
Certain defendants also use plaintiffs' stylized ZOCOR logo, and
several defendants also have purchased sponsored links from the
Internet search companies Google and Yahoo, so that consumers who
search the word "ZOCOR" will be offered links to these
defendants' websites.

        Plaintiffs have not granted defendants permission to
use their marks.  They brought these lawsuits, alleging unfair

competition, including, _inter alia_, trademark infringement, trademark dilution, and false advertising, under federal and state law. Defendants move to dismiss or for judgment on the pleadings, arguing, _inter alia_, that their use of plaintiffs' marks is "fair use." Defendants (with one exception) admit using the ZOCOR marks, but contend that they do it only to identify their products as more affordable generic versions of Zocor. They contend further that no reasonable consumer could be confused into believing that "generic ZOCOR" was anything other than a generic alternative to Zocor.

For the reasons that follow, the motions are granted in part and denied in part.

## BACKGROUND

### A. Facts

For purposes of these motions, the facts alleged in the complaints are assumed to be true.

#### 1. Plaintiffs and Zocor

Plaintiff Merck & Co. ("Merck") is "one of the world's leading pharmaceutical companies." (Compl. ¶ 12).[1] It invests billions of dollars in research and development of prescription drugs, including Zocor. (_Id._ ¶¶ 12, 13). Merck owns U.S. trademark registration no. 1,457,984 for the word mark ZOCOR and

---

[1] "Compl." refers to the complaint in 05 Civ. 3700 against defendant MedCenter. Because the various complaints in these cases are similar in most respects, in general I cite to the MedCenter complaint and refer to the other complaints, by defendant, when necessary to distinguish.

trademark registration no. 1,749,211 for the design mark ZOCOR, which features the mark ZOCOR in a stylized logo.  (Id. ¶ 16, Ex. B).

Merck developed, manufactures, and markets Zocor, which patients take to reduce the cholesterol and fatty substances in their blood.  (Id. ¶¶  13, 15).  Simvastatin is the active ingredient in Zocor (id. ¶ 13), and, since November 1986, Merck has been the exclusive entity legally authorized by patent laws and the U.S. Food and Drug Administration (the "FDA") to sell simvastatin products in the United States (id. ¶¶ 14, 15). Plaintiff MSD Technology L.P. ("MSD") is the assignee of U.S. Patent No. 4,444,784 ("the '784 patent") for "Antihypercholesterolemic Compounds," initially issued in 1984 to Merck.  (Id. ¶¶ 3, 11, & Ex. A).

## 2.  **Defendants and the Challenged Conduct**

Defendants are Canadian entities that control and operate Internet pharmacies offering prescription drugs for sale to U.S. consumers.  (See, e.g., id. ¶ 20).[2]  Through their

_____

[2]      Defendants are: Mediplan Health Consulting, Inc. ("RxNorth"), which operates www.rxnorth.com (RxNorth Compl. ¶¶ 4, 5); North Pharmacy Inc. and PPI Pivotal Partners, Inc. (together, "CanadaPharmacy"), which operate www.canadapharmacy.com (CanadaPharmacy Compl. ¶¶ 4, 5); Universal Drug Store Ltd. ("Universal"), which operates www.universaldrugstore.com (Universal Compl. ¶¶ 4, 5); Canada Drugs.com and Kris Thorkelson (together, "CanadaDrugs"), who operate www.canadadrugs.com (CanadaDrugs Compl.  ¶¶ 4, 5); Medcenter Canada ("MedCenter"), which operates www.medcentercanada.com (Compl. ¶¶ 4, 5); and Total Care Pharmacy Ltd. and Dave Robertson (collectively "CrossBorder"), who operate www.crossborderpharmacy.com (CrossBorder Compl. ¶¶ 4, 5).  On July 21, 2005, Merck agreed to dismiss the complaint against Medcenter's co-defendants in 05

- 3 -

interactive websites, defendants advertise and fill on-line orders for prescription drugs, including a generic simvastatin alternative to Zocor. (See, e.g., id. ¶¶ 18, 19, 21). In addition to their generic versions of simvastatin, defendants also offer for sale Zocor manufactured by Merck affiliates in Canada that are not party to these lawsuits. (Id. Ex. C).[3]

Defendants' websites target a U.S. clientele: prices are listed in U.S. dollars; discounts are listed in comparison to U.S. pharmacy prices; a large percentage of visitors are located in the United States; the sites boast substantial volumes in U.S. sales; and headlines on the sites' main pages identify defendants' intent to service a U.S. market. (See, e.g., id. ¶ 20). For example, a headline on the crossborderpharmacy.com homepage reads "A GLOBAL PHARMACY SERVING AMERICANS," and text on the site explains that the business was built "for the sole purpose of providing Americans with safe affordable Canadian prescriptions." (CrossBorder Compl. ¶¶ 19, 22 & Ex. C, at 1). CanadaPharmacy.com claims to be the most visited Canadian mail order pharmacy website, with more than 500,000 customers and one million prescriptions filled. (CanadaPharmacy Compl. ¶ 20).

---

Civ. 3700, Glassey Consulting and Alex Glassey, without prejudice. (See MedCenter Supp. Mem. at 1 n.1).

[3] Although the complaints themselves contain no allegations regarding defendants' sale of actual Zocor, pages from defendants' websites, attached as exhibits to the complaints, show that all defendants except RxNorth sell Zocor (as well as generic versions of Zocor). It is undisputed that the Zocor distributed by defendants is manufactured by Canadian facilities that are affiliates of Merck.

With the exception of RxNorth, all defendants utilize the ZOCOR word mark in connection with the sale of their generic simvastatin products. (See, e.g., Compl. ¶ 22). These defendants list the generic alternative to Zocor on their sites in combination with the ZOCOR word mark, and, in the case of CanadaPharmacy, Universal, and MedCenter, the ZOCOR design mark as well. For example, CanadaDrugs lists "Zocor" as one of the "most popular prescription drugs" on its home page. (CanadaDrugs Compl. ¶ 22). Clicking on the listing "Zocor" or running a search for the word "Zocor" on the site links consumers to a page that offers "Zocor" and "Generic Zocor" products in five dosage levels. (Id.). By clicking on the desired dosage level and quantity, consumers are linked to pages where they may complete the sale. (Id. ¶ 22 & Ex. C).

Defendants' sites differ in the way they list the generic simvastatin products and their proximity to the ZOCOR mark. On the Universal Drugstore site, for example, the ZOCOR design mark appears. Clicking on the logo takes a consumer to a page that offers "SIMVASTATIN (Zocor generic)" as well as "ZOCOR (simvastatin)" in various doses and quantities. (Universal Drug Compl. Ex. C). On the North Pharmacy site, consumers are shown the ZOCOR design mark and are taken to a page that features the design mark again above a box that offers a choice between "Generic" and "Brand" in varying doses and quantities. (North Pharmacy Compl. Ex. C). The site offers "brand Zocor," made by Merck's Canadian affiliate, as well as "generic Zocor." (Id.).

The CrossBorder site is somewhat different.  The home
page lists a number of brand-name drugs, including "Zocor."
Clicking on the word "Zocor" takes the consumer to a page that is
headed: "ZOCOR 80MG TABLET."  Underneath, in parentheses, is the
word "SIMVASTATIN."  Underneath that the consumer is offered, on
separate lines: "ZOCOR 80MG TABLET," "GENERIC SIMVASTATIN 80 MG
TABLET," and "GENERIC SIMVASTATIN 80 MG TABLET," with different
quantities for the latter two.  (CrossBorder Compl. Ex. C).  In
other words, the site offers both Zocor (manufactured by a Merck
Canadian affiliate) and generic simvastatin, but does not use the
phrase "generic Zocor" or any iteration thereof.

CanadaPharmacy, MedCenter, and Universal have engaged
Internet search engines Google and Yahoo to have links to their
websites displayed, as sponsored links, among the first results
returned when a consumer searches the keyword "Zocor."  (Compl. ¶
19; CanadaPharmacy Compl. ¶ 19; Universal Compl. ¶ 19).[4]

Defendants' websites differ in the dosages of generic
simvastatin and Zocor they offer, the volume of their U.S. sales,
the ways that they advertise the products to consumers (including
their use of search engines), their use of the ZOCOR marks, and

_____

[4]     "A search engine will find all web pages on the
Internet with a particular word or phrase."  Sporty's Farm L.L.C.
v. Sportsman's Market, Inc., 202 F.3d 489, 493 (2d Cir. 2000).
Google, Yahoo, and others "sell advertising linked to search
terms, so that when a consumer enters a particular search term,
the results page displays not only a list of Websites generated
by the search engine program using neutral and objective
criteria, but also links to Websites of paid advertisers (listed
as 'Sponsored Links')."  Gov't Employees Ins. Co. v. Google,
Inc., 330 F. Supp. 2d 700, 702 (E.D. Va. 2004) ("GEICO").

their explanation of the lack of FDA approval.[5]  Merck has not authorized the sale of generic simvastatin products by defendants or defendants' use of the ZOCOR word mark or design mark, and none of defendants are authorized by law to sell prescription drugs in the United States.  (See, e.g., RxNorth Compl. ¶ 20; CanadaPharmacy Compl. ¶¶ 26-28).

**B.    These Actions**

Merck filed its complaint against RxNorth on April 8, 2005, and the complaints against all other defendants on April 11, 2005.  Against RxNorth, Merck asserts claims for patent infringement (Count I), unfair competition under the Lanham Act and state law (Counts II and III), and deceptive acts and practices under state law (Count IV).  In the other cases, Merck asserts eight counts: federal claims of patent infringement (Count I), trademark infringement (Count II), unfair competition and false designation of origin (Counts III and IV), and dilution (Count V), as well as state law claims of trademark infringement and unfair competition (Count VI), dilution (Count VII), and deceptive acts and practices (Count VIII).

RxNorth moves for judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c) to dismiss Counts II-IV and CanadaPharmacy, Universal, and CrossBorder move for judgment on the pleadings to dismiss Counts II-VIII.  MedCenter and CanadaDrugs move to

_____

    [5]    On their websites, MedCenter and CanadaDrugs relay the FDA's position that importation of prescription drugs from Canadian pharmacies violates the law.  (Compl. Ex. C; CanadaDrugs Compl. Ex. C).

dismiss Counts II-VIII pursuant to Fed. R. Civ. P. 12(b)(6).  No
defendant has moved to dismiss the patent infringement claims and
those claims are not before the Court on these motions.
Thorkelson moves to dismiss the claims against him for lack of
personal jurisdiction pursuant to Fed. R. Civ. P. 12(b)(2).

## DISCUSSION

First, I review the standards applicable to motions to
dismiss for failure to state a claim and motions for judgment on
the pleadings.  Second, I discuss defendants' motions to dismiss
plaintiffs' claims on the merits.  Third, I discuss Thorkelson's
motion to dismiss for lack of personal jurisdiction.

## A.    Motions to Dismiss and for Judgment on the Pleadings

In considering a motion to dismiss, I must accept the
factual allegations of the complaint as true and draw all
reasonable inferences in favor of the plaintiff.  Bernheim v.
Litt, 79 F.3d 318, 321 (2d Cir. 1996).  A complaint may not be
dismissed under Fed. R. Civ. P. 12(b)(6) "unless it appears
beyond doubt that the plaintiff can prove no set of facts in
support of his claim which would entitle him to relief."  Chance
v. Armstrong, 143 F.3d 698, 701 (2d Cir. 1998) (quoting Conley v.
Gibson, 355 U.S. 41, 45-46 (1957)).  The test for dismissal is
not whether the plaintiff is likely to prevail, but whether it is
entitled to offer evidence to support its claims.  Id.  "In
considering a motion to dismiss for failure to state a claim
under Fed. R. Civ. P. 12(b)(6), a district court must limit
itself to facts stated in the complaint or in documents attached

to the complaint as exhibits or incorporated in the complaint by reference." Kramer v. Time Warner, Inc., 937 F.2d 767, 773 (2d Cir. 1991); see also Chambers v. Time Warner, Inc., 282 F.3d 147, 155 (2d Cir. 2002) ("Consideration of extraneous material in judging the sufficiency of a complaint is at odds with the liberal pleading standard of [Fed. R. Civ. P.] 8(a)(2), which requires only that the complaint contain 'a short and plain statement of the claim showing that the pleader is entitled to relief.'").

A motion for judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c) is analyzed under the same standard applicable to a motion to dismiss for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6). See Sheppard v. Beerman, 18 F.3d 147, 150 (2d Cir. 1994). Accordingly, judgment on the pleadings is appropriate only if, drawing all reasonable inferences in favor of the non-moving party, it is apparent from the pleadings that the no set of facts can be proven that would entitle the plaintiff to relief. See id. In deciding a motion for judgment on the pleadings, a court may consider the pleadings and attached exhibits, statements or documents incorporated by reference, and matters subject to judicial notice. Prentice v. Apfel, 11 F. Supp. 2d 420, 424 (S.D.N.Y. 1998) (citing Brass v. Am. Film Techs., Inc., 987 F.2d 142, 150 (2d Cir. 1993)).

## B.  The Merits

Plaintiffs have asserted a variety of unfair competition claims under both federal and state law. See Lanham

Act §§ 32(1), 43(a), and 43(c), 15 U.S.C. §§ 1114(1), 1125(a), 1125(c); N.Y. Gen. Bus. Law §§ 349, 350, 360-l (McKinney 2004). State law largely tracks federal law in this area, and although there are some differences, for purposes of these motions, I do not discuss the state law claims separately.[6]

Plaintiffs' claims fall into four general categories: (1) trademark infringement, based on use of the ZOCOR word and design marks on defendants' websites; (2) trademark infringement, based on the purchase of sponsored links from Internet search companies that provide consumers seeking "Zocor" with links to defendants' websites; (3) trademark dilution, based on the contention that defendants' use of the ZOCOR word and design marks dilutes plaintiffs' valuable ZOCOR mark; and (4) false advertising, based on the contention that certain defendants are falsely telling consumers, implicitly, that they are authorized by law to sell their prescription drugs (which are manufactured in Canada) to consumers in the United States and that Merck

---

[6]     The standard for trademark infringement under the Lanham Act is similar to the standard for analogous state law claims.  See Bristol-Myers Squibb Co. v. McNeil-P.P.C., Inc., 973 F.2d 1033, 1048 (2d Cir. 1992) (applying same likelihood of confusion analysis to claims under New York law as to claims under Lanham Act).  There are slight differences between federal and state law in the requirements for a dilution claim.  Compare 15 U.S.C. § 1127 with N.Y. Gen. Bus. Law § 360-l; see Tommy Hilfiger Licensing, Inc. v. Nature Labs, LLC, 221 F. Supp. 2d 410, 421 (S.D.N.Y. 2002).  The federal standards applicable to false advertising claims are substantially similar to the standards applicable to claims under the New York deceptive trade practices statute.  See Avon Prods., Inc. v. S.C. Johnson & Son, Inc., 984 F. Supp. 768, 800 (S.D.N.Y. 1997) ("The standards for bringing a claim under § 43(a) of the Lanham Act are substantially the same as those applied to claims brought under . . . §§ 349 and 350 of the New York General Business Law.").

sponsors or approves their products.  I address the four

categories of claims in turn.

    **1.    Trademark Infringement --**
            **Use of Marks on Websites**

     **a.   Applicable Law**

To prevail on a trademark infringement claim under §

32(1) of the Lanham Act, 15 U.S.C. § 1114(1), or false

designation of origin under § 43(a) of the Lanham Act, 15 U.S.C.

§ 1125(a),[7] a plaintiff must first show that it owns a valid mark

entitled to protection under the statute that the defendant used

in commerce, without the plaintiff's consent and in connection

with the sale or advertising of goods or services.  See 1-800

Contacts, Inc. v. WhenU.com, Inc., 414 F.3d 400, 406-07 (2d Cir.

2005).  The plaintiff must then show that the defendant's use of

the mark "is likely to cause consumers confusion as to the origin

or sponsorship of the defendant's goods."  Savin Corp. v. Savin

Group, 391 F.3d 439, 456 (2d Cir. 2004); see also 15 U.S.C. §

1125; 1-800 Contacts, 414 F.3d at 406-07.  Courts often narrow

this analysis to two prongs: (1) the validity of plaintiff's

trademark and (2) likelihood of confusion.  See Savin, 391 F.3d

_____

     [7]    "Section 43(a) is a broad federal unfair competition
provision which protects unregistered trademarks similar to the
way that section 32(1) . . . protects registered marks."
Chambers, 282 F.3d at 155.  Thus, trademark infringement is a
narrower form of unfair competition, and the same legal test
applies with respect to both.  See Moseley v. V Secret Catalogue,
Inc., 537 U.S. 418, 428 (2003) ("Traditional trademark
infringement law is a part of the broader law of unfair
competition."); see also Safeway Stores, Inc. v. Safeway Props.,
Inc., 307 F.2d 495, 497 n.1 (2d Cir. 1962).

at 456 (describing this two-prong test for trademark infringement); Prof'l Sound Servs., Inc. v. Guzzi, 349 F. Supp. 2d 722, 730 (S.D.N.Y. 2004) (citing Sports Authority, Inc. v. Prime Hospitality Corp., 89 F.3d 955, 960 (2d Cir. 1996), and giving same standard for false designation claim), aff'd, 159 Fed. Appx. 270 (2d Cir. 2005); see also 3 J. Thomas McCarthy, McCarthy on Trademarks and Unfair Competition § 23:11.1 (4th ed. 2005) ("'trademark use' is not a separate element of plaintiff's case, but is only one aspect of the likelihood of confusion requirement") ("McCarthy on Trademarks"). For purposes of these motions, no dispute exists as to the first prong, as Merck owns valid marks. Hence, I limit my discussion to the second prong.

Likelihood of confusion requires that "'an appreciable number of ordinarily prudent purchasers are likely to be misled, or indeed simply confused, as to the source of the goods in question,'" Savin, 391 F.3d at 456 (quoting Mushroom Makers, Inc. v. R.G. Barry Corp., 580 F.2d 44, 47 (2d Cir. 1978)), or "are likely to believe that the mark's owner sponsored, endorsed, or otherwise approved of the defendant's use of the mark," Tommy Hilfiger Licensing, Inc. v. Nature Labs, LLC, 221 F. Supp. 2d 410, 414 (S.D.N.Y. 2002) (citing Dallas Cowboys Cheerleaders, Inc. v. Pussycat Cinema, Ltd., 604 F.2d 200, 204-05 (2d Cir. 1979)). Courts apply the well-established Polaroid factors to determine whether a likelihood of confusion exists: (1) strength of plaintiff's mark, (2) similarity of competing marks, (3) competitive proximity of the products, (4) likelihood that

- 12 -

plaintiff will "bridge the gap" and offer a product like
defendants' product, (5) actual confusion, (6) defendants' good
faith, (7) quality of defendants' product, and (8) sophistication
of the buyers.  Polaroid Corp. v. Polarad Elecs. Corp., 287 F.2d
492, 495 (2d. Cir. 1961), cert. denied, 368 U.S. 820 (1961).  The
application of these factors is not mechanical; the court must
focus on the ultimate question of whether consumers are likely to
be confused.  Nabisco, Inc. v. Warner-Lambert Co., 220 F.3d 43,
46 (2d Cir. 2000).

> b.  **Application**

Plaintiffs allege, and provide website printouts to
show, that all defendants, with the exception of RxNorth,[8] list
the generic alternative to Zocor on their sites in combination
with the ZOCOR word mark, and, in the case of certain defendants,
the ZOCOR design mark as well.  The crux of plaintiffs' complaint
is that this activity causes a likelihood that consumers will be
confused into believing that Merck authorizes, sponsors, or is
affiliated with defendants or their generic products.

Except as stated below, defendants' motions are denied
to the extent they seek dismissal of the trademark infringement
claims.  The likelihood of confusion test is a fact-intensive
analysis that ordinarily does not lend itself to a motion to

---

[8]     Merck has not alleged trademark claims against Rxnorth
because that defendant does not use the ZOCOR mark but calls its
product "simvastatin," with a "G" to indicate a generic product.
(Pl. Opp. Mem. on Counts II-VII at 3 n.5; Pl. App. Ex. F).  Merck
has alleged a false advertising claim against RxNorth, as
discussed below.

dismiss.  See Cooper v. Parsky, 140 F.3d 433, 440 (2d Cir. 1998)
("The task of the court in ruling on a Rule 12(b)(6) motion is
merely to assess the legal feasibility of the complaint, not to
assay the weight of the evidence which might be offered in
support thereof.") (internal quotation marks and citation
omitted); Google Inc. v. Am. Blind & Wallpaper Factory, Inc., No.
C 03-05340 (JF), 2005 WL 832398, at *6 (N.D. Cal. Mar. 30, 2005)
(holding that it would be "inappropriate" to make factual
findings and draw legal conclusions, "particularly with regard to
likelihood of confusion," on motion to dismiss without benefit of
full factual record); Gov't Employees Ins. Co. v. Google, Inc.,
330 F. Supp. 2d 700, 702 (E.D. Va. 2004) ("GEICO") ("Whether
defendants' uses . . . create a likelihood of confusion are fact-
specific issues not properly resolved through a motion to
dismiss.").

Here, plaintiffs have unequivocally alleged the
existence of the likelihood of confusion.  (Compl. ¶ 34
("Medcentercanada.com's activities in commerce in connection with
the sale of products identified as 'ZOCOR generic' . . . are
likely to cause confusion, mistake, or deception as to the source
or sponsorship of such products and/or their affiliation with
Merck, causing harm to Merck's reputation and goodwill.
Purchasers and potential purchasers are likely to believe in
error that such products . . . are approved by or are distributed
by or under the authorization or sponsorship of Merck.")).
Indeed, the various complaints allege actual confusion as well.

(See, e.g., id. ¶ 36 ("Medcentercanada.com's activities in commerce as alleged herein have resulted in actual confusion.")).

Defendants argue nonetheless that the Court can find, as a matter of law, that no consumer confusion can exist because "[n]o reasonable patient could think, and no reasonable juror could find, that 'ZOCOR generic' is anything but a generic alternative to the ZOCOR brand." (RxNorth Supp. Mem. at 8). In essence, defendants assert affirmative defenses of classic fair use and nominative fair use (or comparative advertising), which I address in turn.

### i.    Classic Fair Use

Certain defendants argue that their use of the ZOCOR mark constitutes permissible fair use under § 33(b)(4) of the Lanham Act. 15 U.S.C. § 1115(b)(4). Classic fair use is use of a mark not in a trademark sense, but in a descriptive sense, and in good faith. EMI Catalogue P'ship v. Hill, Holliday, Connors, Cosmopulus Inc., 228 F.3d 56, 64 (2d Cir. 2000); see also 3 McCarthy on Trademarks § 23:11.1. "[F]air use permits others to use a protected mark to describe aspects of their own goods." Nihon Keizai Shimbun, Inc. v. Comline Bus. Data, Inc., 166 F.3d 65, 73 (2d Cir. 1999) (internal citation and quotation marks omitted). This defense preserves the "public's right to use descriptive words . . . in their ordinary descriptive sense . . . over the exclusivity claims of the trademark owner." Car-Freshner Corp. v. S.C. Johnson & Son, Inc., 70 F.3d 267, 269 (2d Cir. 1995); see also KP Permanent Make-Up, Inc. v. Lasting

Impression I, Inc., 543 U.S. 111, 122 (2004) (describing how classic fair use defense prevents a person from "obtain[ing] a complete monopoly on use of a descriptive term simply by grabbing it first").

Here, the classic fair use defense fails, at least at this stage, where the only question is the sufficiency of the pleadings. The only type of use permissible under this defense is non-trademark use, see 3 McCarthy on Trademarks § 23:11.1; see Horphag Research Ltd. v. Pellegrini, 337 F.3d 1036, 1041 (9th Cir. 2003) ("classic fair use defense applies only to marks that possess both a primary meaning and a secondary meaning -- and only when the mark is used in its primary descriptive sense rather than its secondary trademark sense") (internal quotation marks and citation omitted), and plaintiffs have alleged that defendants use the ZOCOR marks in a trademark sense. Moreover, at this stage I cannot conclude, as a matter of law, that use of the phrases "generic ZOCOR," "ZOCOR generic," or "ZOCOR -- generic" is primarily a descriptive use. Plaintiffs may be able to prove that an appreciable number of ordinarily prudent consumers are confused as to the source and sponsorship of a product described as "generic ZOCOR." The phrase is not free from ambiguity.

### ii. Nominative Fair Use and Comparative Advertising

A defendant may use a plaintiff's trademark to identify the plaintiff's goods so long as there is no likelihood of

confusion about the source of defendant's product or the mark-holder's sponsorship or affiliation.  See Nihon Keizai Shimbun, 166 F.3d at 73; see also Chambers v. Time Warner, Inc., No. 00 Civ. 2839 (JSR), 2003 WL 749422, at *3 (S.D.N.Y. Mar. 5, 2003); 3 McCarthy on Trademarks § 23:11.  The "nominative fair use" defense is proven when: "'[f]irst, the product or service in question must be one not readily identifiable without use of the trademark; second, only so much of the mark or marks may be used as is reasonably necessary to identify the product or service; and third, the user must do nothing that would, in conjunction with the mark, suggest sponsorship or endorsement by the trademark holder." New Kids on the Block v. News Am. Publ'g, Inc., 971 F.2d 302, 308 (9th Cir. 1992); see also EMI Catalogue, 228 F.3d at 65 ("Where a mark incorporates a term that is the only reasonably available means of describing a characteristic of another's goods, the other's use of that term in a descriptive sense is usually protected by the fair use doctrine.") (citing New Kids on the Block, 971 F.2d at 308).  A common example of nominative use arises in comparative advertising.  See 3 McCarthy on Trademarks § 23:11.

Courts permit defendants to use a trademarked name to convey to consumers what it is their product seeks to copy; in such cases, defendants are "not trying to get the good will of the name, but the good will of the goods." Saxlehner v. Wagner, 216 U.S. 375, 380-81 (1910) (finding that trademark holders may not keep "manufacturers from telling the public in a way that

will be understood . . . what they are copying and trying to sell"); Societe Comptoir de L'Industrie v. Alexander's Dep't Stores, Inc., 299 F.2d 33, 36 (2d Cir. 1962) ("The Lanham Act does not prohibit a commercial rival's truthfully denominating his goods a copy of a design in the public domain, though he uses the name of the designer to do so. Indeed it is difficult to see any other means that might be employed to inform the consuming public of the true origin of the design."); Neutrik AG v. Switchcraft, Inc., No. 99 Civ. 11931 (JSM), 2001 WL 286722, at *3 (S.D.N.Y. Mar. 23, 2001) ("[C]laiming that one's product is . . . a substitution for another's product is a common method of advertisement that encourages competition.").

In the sale of pharmaceutical products, courts have upheld defendants' use of plaintiffs' trademarks where such use serves as a "comparative reference that aids consumers" in identifying the underlying chemical compound in defendant's product. Upjohn Co. v. Am. Home Prods. Corp., 598 F. Supp. 550, 561 (S.D.N.Y. 1984); see also G.D. Searle & Co. v. Hudson Pharm., 715 F.2d 837, 842 n.12 (3d Cir. 1983) (permitting defendant's use of trademark Metamucil in advertising equivalent product where chemical name alone "would not convey enough information"). Defendants argue that consumers are much more likely to recognize the product they seek under the name "ZOCOR" than its chemical name "simvastatin" (see CanadaDrugs Supp. Mem. on Counts II-VII at 7), and that if they are required to refer to their product as "generic simvastatin" without reference to "ZOCOR," they would be

forced to resort to an inferior means of communicating with consumers, see G.D. Searle, 715 F.2d at 842 n.12 ("The Lanham Act does not compel a competitor to resort to second-best communication.").

This issue, however, cannot be decided on the present motions to dismiss, except as discussed below, because the third element of the nominative fair use defense requires that the use of the trademark not create a likelihood of confusion as to the mark-holder's sponsorship, endorsement, or affiliation. See George Basch Co. v. Blue Coral, Inc., 968 F.2d 1532, 1541 (2d Cir. 1992) ("Absent confusion, imitation of certain successful features in another's product is not unlawful and to that extent a 'free ride' is permitted.") (quoting Norwich Pharmacal Co. v. Sterling Durg, Inc., 271 F.2d 569, 572 (2d Cir. 1959)). As noted above, the existence of consumer confusion necessitates focusing on "the minds of the relevant purchasers -- an analysis based on a factual inquiry inappropriate to a motion to dismiss." Nasdaq Stock Mkt. v. Archipelago Holdings, 336 F. Supp. 2d 294, 305 (S.D.N.Y. 2004).

I cannot conclude, on these motions to dismiss, that the ZOCOR mark, adjacent to or in close proximity to the word "generic" on defendants' websites, cannot give rise to consumer confusion as to the origin or sponsorship of the product. Cf. Courtenay Comm'ns Corp. v. Hall, 334 F.3d 210, 214 n.1 (2d Cir. 2003) (finding that a "hyperlink connection to a page of endorsements "suggests affiliation, sponsorship, or endorsement

by" plaintiff) (internal quotation marks omitted). The placement of the ZOCOR design mark, for example, immediately above a box that lists several entries for "Generic" and "Brand" in varying dosages and quantities is not so clear that I would conclude, without the benefit of any evidence, that plaintiffs cannot prove that an appreciable number of reasonable consumers would be confused. (See CanadaPharmacy Compl. Ex. C). Merck is entitled to attempt to prove that such confusion exists.

The CrossBorder website is different. CrossBorder does not use the phrase "generic ZOCOR" or any iteration thereof. To the contrary, its website describes its generic product as "generic simvastatin." (CrossBorder Compl. Ex. C). Although the mark ZOCOR appears on the site, CrossBorder sells Zocor (manufactured by Merck's Canadian affiliates), and thus there is nothing improper about its use of the ZOCOR mark for that purpose. Nor is there anything improper (or confusing) about its offering, along side the brand product, its generic alternative, which is described as "generic simvastatin." See 1-800 Contacts, Inc. v. WhenU.com, Inc., 414 F.3d 400, 411 ("[I]t is routine for vendors to seek specific 'product placement' in retail stores precisely to capitalize on their competitors' name recognition. For example, a drug store typically places its own store-brand generic products next to the trademarked products they emulate in order to induce a customer who has specifically sought out the trademarked product to consider the store's less-expensive alternative.").

Accordingly, defendants' motions to dismiss the trademark infringement claims based on the use of the ZOCOR marks on their websites are denied, except as to CrossBorder.  These claims against CrossBorder are dismissed.

**2.    Trademark Infringement --
            Use of Mark with Search Engines**

CanadaPharmacy, MedCenter, and Universal also "use" the ZOCOR mark in the sense that they have purchased from Internet search engine companies Google and Yahoo the right to have their websites displayed among the first results returned, as sponsored links, when a computer user conducts a search for the keyword "ZOCOR."  In Count II of the complaints against these defendants, Merck alleges that this conduct constitutes trademark infringement.  Defendants argue that this claim should be dismissed as a matter of law because purchasing "ZOCOR" as a keyword on Internet search engines does not constitute a trademark "use."  (MedCenter Supp. Mem. at 17-19).  I agree with defendants.

A trademark is "used in commerce" in connection with goods when "it is placed in any manner on the goods or their containers or the displays associated therewith or on the tags or labels affixed thereto, or if the nature of the goods makes such placement impracticable, then on documents associated with the goods or their sale, and . . . the goods are sold or transported in commerce."  15 U.S.C. § 1127(1).  A mark is "used in commerce" in connection with services "when it is used or displayed in the

sale or advertising of services and the services are rendered in commerce."  15 U.S.C. § 1127(2).

Here, in the search engine context, defendants do not "place" the ZOCOR marks on any goods or containers or displays or associated documents, nor do they use them in any way to indicate source or sponsorship.  Rather, the ZOCOR mark is "used" only in the sense that a computer user's search of the keyword "Zocor" will trigger the display of sponsored links to defendants' websites.  This internal use of the mark "Zocor" as a key word to trigger the display of sponsored links is not use of the mark in a trademark sense.  Cf. 1-800 Contacts, 414 F.3d at 408 (holding that defendant's inclusion of plaintiff's website address, www.1800contacts.com, in defendant's internal directory to trigger pop-up ads was not "use" in trademark sense).

As the Second Circuit observed in 1-800 Contacts, "[a] company's internal utilization of a trademark in a way that does not communicate it to the public is analogous to a[n] individual's private thoughts about a trademark."  414 F.3d at 409; see also Raymond T. Nimmer, Information Law § 6:68 (2005); Wells Fargo & Co. v. WhenU.Com, Inc., 293 F. Supp. 2d 734, 762 (E.D. Mich. 2003) (no trademark infringement where defendant used plaintiffs' marks in directory to trigger pop-up ads, where defendant did not use marks "to indicate anything about the source of the products and services it advertises"); U-Haul Int'l, Inc. v. WhenU.com, Inc., 279 F. Supp. 2d 723, 728 (E.D. Va. 2003) (no trademark infringement where defendant only used

mark in its internal directory to determine what advertisements to display for consumers and did not hinder access to plaintiff's sites).[9]  Moreover, it is significant that defendants actually sell Zocor (manufactured by Merck's Canadian affiliates) on their websites.  Under these circumstances, there is nothing improper with defendants' purchase of sponsored links to their websites from searches of the keyword "Zocor."

Accordingly, this prong of defendants' motions is granted.  The use by CanadaPharmacy, MedCenter, and Universal of the mark ZOCOR in connection with the search engines is not an independent basis for a trademark infringement claim.

### 3.   **Trademark Dilution**

To prevail on their claims of trademark dilution under § 43(c) of the Lanham Act, 15 U.S.C. § 1125(c), plaintiffs must

---

[9]    But see GEICO, 330 F. Supp. 2d at 703-04 (holding that Google's sale to advertisers of right to use specific trademarks as "keywords" to trigger their ads constituted "use in commerce"); Google Inc. v. Am. Blind & Wallpaper Factory, Inc., No. C 03-05340 (JF), 2005 WL 832398, at *6 (N.D. Cal. Mar. 30, 2005) (declining to dismiss trademark claims against Google on "use" grounds "in light of the uncertain state of the law" and the Ninth Circuit's implicit finding of "use in commerce" under like circumstances in Playboy Enterprises, Inc. v. Netscape Communications Corp., 354 F.3d 1020 (9th Cir. 2004)).  In Playboy, the Ninth Circuit focused on the "likelihood of confusion" prong of the analysis, as there was "[n]o dispute" as to whether defendants had "used the marks in commerce" when it sold sponsored links for the terms "playboy" and "playmate."  Id. at 1024.  The district court in American Blind noted that it was "not at all clear that the [Ninth Circuit]'s ultimate conclusion that the defendants' alleged 'use' of the plaintiff's trademarks was 'actionable,' was not based on an implicit, preliminary determination of actionable trademark 'use' in the sense discussed by Defendants."  2005 WL 832398 at *6 (internal citation omitted).

establish that (1) their mark is famous within the meaning of the statute and (2) defendants' use caused actual dilution of that mark.  Savin Corp., 391 F.3d at 455; see also Global Vision Prods., Inc. v. Pfizer Inc., No. 04 Civ. 9198 (LAK), 2006 WL 344757, at *3 (S.D.N.Y. Feb. 14, 2006) (dismissing dilution claim where plaintiff failed to demonstrate these two prongs).  Here, there is no dispute that plaintiffs' ZOCOR mark is famous within the meaning of the Lanham Act.  The issue, therefore, is whether plaintiffs can prove actual dilution as a result of defendants' conduct.

Dilution is "the lessening of the capacity of a famous mark to identify and distinguish goods or services, regardless of the presence or absence of . . . (1) competition between the owner of the famous mark and other parties, or (2) likelihood of confusion, mistake, or deception."  15 U.S.C. § 1127.  Under federal and state law, dilution can adopt either of two forms: tarnishment or blurring.  Tommy Hilfiger Licensing, Inc. v. Nature Labs, LLC, 221 F. Supp. 2d 410, 424 (S.D.N.Y. 2002). Here, defendants allege blurring.

"'Dilution by "blurring" . . . occur[s] where the defendant uses or modifies the plaintiff's trademark to identify the defendant's goods and services, raising the possibility that the mark will lose its ability to serve as a unique identifier of the plaintiff's product.'"  Id. at 421 (quoting Deere & Co. v. MTD Prods., Inc., 41 F.3d 39, 43 (2d Cir. 1994)).  Factors to consider in evaluating such claims include: (1) similarity of the

marks, (2) similarity of the products, (3) sophistication of consumers, (4) predatory intent, (5) renown of the senior mark, and (6) renown of the junior mark. See Deere, 41 F.3d at 43 n.8 (citing Mead Data Cent., Inc. v. Toyota Motor Sales, Inc., 875 F.2d 1026, 1035 (2d Cir. 1989) (Sweet, J., concurring)).

Here, Merck alleges that defendants' use of the ZOCOR mark combined with the word "generic" has caused "irreparable dilution of the distinctive quality" of its ZOCOR mark. (See, e.g., Compl. ¶ 51). This allegation is sufficient to sustain a dilution claim, for it is certainly possible that identifying a product as "ZOCOR generic" would cause the ZOCOR mark to lose its ability to serve as a unique identifier of plaintiffs' product.

Defendants, however, assert that no blurring occurs because their use of the ZOCOR mark is permissible and fair. CanadaDrugs, in particular, invokes the "statutory comparative advertising exception" under Lanham Act § 43(c)(4), which permits "[f]air use of a famous mark by another person in comparative commercial advertising or promotion to identify the competing goods or services of the owner of the famous mark." 15 U.S.C. § 1125(c)(4). For the reasons discussed above, this argument is rejected at this stage of the litigation. This prong of the motions is denied, except as to CrossBorder, which does not use the phrase "generic Zocor" or any iteration thereof.

**4.  False Advertising**

Plaintiffs also assert unfair competition claims based on their allegations that defendants' use of the ZOCOR mark on

their websites falsely implies to consumers in the United States that "[d]efendants' generic simvastatin products are either legally authorized by the FDA for sale in the United States" or are approved by Merck because "these patients understand that only Merck's ZOCOR brand simvastatin product can be lawfully sold in the United States."  (Compl. ¶¶ 45, 46).  Although not denominated as such, the claims are essentially false advertising claims, under § 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).  (See, e.g., Pl. Opp. Mem. on Counts II-VII at 19-25).

### a.  **Applicable Law**

To prevail on a false advertising claim, "a plaintiff must demonstrate the falsity of the challenged advertisement, by proving that it is either (1) literally false, as a factual matter; or (2) implicitly false, i.e., although literally true, still likely to mislead or confuse consumers."  McNeil-PPC, Inc. v. Pfizer Inc., 351 F. Supp. 2d 226, 248 (S.D.N.Y. 2005) (citing Societe des Hotels Meridien, S.A. v. LaSalle Hotel Operating P'ship, L.P., 380 F.3d 126, 132 (2d Cir. 2004)).  Where a plaintiff proceeds on a claim of implied falsehood, the plaintiff "must demonstrate, by extrinsic evidence, that the challenged [advertisements] tend to mislead or confuse consumers."  Johnson & Johnson*Merck Consumer Pharms. Co. v. Smithkline Beecham Corp., 960 F.2d 294, 297 (2d Cir. 1992).  As the Second Circuit has explained, the inquiry is: "what does the public perceive the message to be?"  Id. at 298.

Typically, an implied claim is proven through the use of a consumer survey that shows a substantial percentage of consumers are taking away the message that the plaintiff contends the advertising is conveying. Id. at 298 ("the success of a plaintiff's implied falsity claim usually turns on the persuasiveness of a consumer survey"). In addition, the false or misleading statement must be material. S.C. Johnson & Son, Inc. v. Clorox Co., 241 F.3d 232, 238 (2d Cir. 2001); see also 4 McCarthy on Trademarks § 27:35 ("Plaintiff must make some showing that the defendant's misrepresentation was 'material' in the sense that it would have some effect on consumers' purchasing decisions.").

False advertising claims based on allegations of implied governmental approval have not been allowed, for "the law does not impute representations of government approval . . . in the absence of explicit claims." Avon Prods., Inc. v. S.C. Johnson & Son, Inc., 984 F. Supp. 768, 796 (S.D.N.Y. 1997) (allegation of implied approval by Environmental Protection Agency). In so holding, the Avon court relied on a Fourth Circuit decision that is particularly instructive here. Id. (citing Mylan Labs. v. Matkari, 7 F.3d 1130 (4th Cir. 1993)). The Fourth Circuit found that "permitting [plaintiff] to proceed on the theory that the defendants violated § 43(a) merely by placing their drugs on the market would, in effect, permit [plaintiff] to use the Lanham Act as a vehicle by which to enforce the Food, Drug, and Cosmetic Act . . . and the

regulations promulgated thereunder."  Mylan Labs., 7 F.3d at
1139.  The court observed that "[s]uch a theory [was] . . . too
great a stretch under the Lanham Act," and held that absent an
explicit representation that the drugs had received FDA approval,
the defendant could not be held liable under the Lanham Act.  Id.

### b.  **Application**

This prong of defendants' motion is granted in part and
denied in part.

First, plaintiffs do not allege that defendants make
explicit misrepresentations as to FDA approval of their generic
simvastatin products.  In fact, exhibits attached to the
complaints show that at least two defendants make statements to
the contrary on their websites, giving the FDA's position that
importing drugs from Canadian pharmacies violates the law.  The
claims thus rely on the proposition that defendants have made
implied misrepresentations about FDA approval -- a proposition
that is unsustainable as a Lanham Act false advertising claim.
See id. at 1139; Avon Prods., 984 F. Supp. at 786; see also PDK
Labs, Inc. v. Friedlander,  103 F.3d 1105, 1113 (2d Cir. 1997)
(finding no private right of action where a party's goal is to
enforce FDA statute).  Accordingly, Merck's claims of false
advertising based on allegations that U.S. patients have been
misled into believing that defendants' generic simvastatin
product are legally authorized by the FDA are hereby dismissed.[10]

---

[10]    For this reason, to the extent plaintiffs have asserted
false advertising claims based on defendants' sale of Zocor

Second, to the extent that Merck alleges defendants' activities are misleading in that they are likely to cause confusion as to the affiliation of defendants' generic simvastatin products with Merck, such misrepresentations are actionable under § 43(a), and defendants' motions to dismiss the false advertising claims in this respect are denied.  Plaintiffs are entitled to further develop facts on this theory.

## C.    **Personal Jurisdiction over Thorkelson**

Thorkelson is the Chief Executive Officer ("CEO") of CanadaDrugs and a resident of Manitoba, Canada.  (CanadaDrugs Compl. ¶ 4; Thorkelson 6/30/05 Decl. ¶ 2).  He contends that the Court lacks personal jurisdiction over him.

On a motion to dismiss for lack of personal jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2), "the plaintiff bears the burden of showing that the court has jurisdiction over the defendant."  Kernan v. Kurz-Hastings, Inc., 175 F.3d 236, 240 (2d Cir. 1999) (quoting Metro. Life Ins. Co. v. Robertson-Ceco Corp., 84 F.3d 560, 566 (2d Cir.

---

manufactured by Merck's Canadian affiliate, the claims are dismissed as well.  In any event, plaintiffs have not actually pled any claims based on defendants' sale of Zocor, as the complaints refer only to the sale of "generic simvastatin" products and make no mention of defendants' activities with respect to brand Zocor.  (Cf. Compl. ¶ 27 ("[Defendant] offers to sell, sells and ships to purchasers in New York and elsewhere in the United States, simvastatin products that are not authorized by law for sale in the United States, including the activities of [defendant] alleged herein.")).  In light of the law prohibiting false advertising claims based on implied governmental approval, plaintiffs' request to re-plead this portion of their claims is denied.

1996)).  At the pleadings stage, a plaintiff is required only to make a prima facie showing of jurisdiction.  DiBella v. Hopkins, 187 F. Supp. 2d 192, 198 (S.D.N.Y. 2002).  Where, as here, there has been no hearing or trial on the merits, "all pleadings and affidavits must be construed in the light most favorable to [plaintiffs] and all doubts must be resolved in . . . plaintiff[s'] favor."  Landoil Res. Corp. v. Alexander & Alexander Servs., Inc., 918 F.2d 1039, 1043 (2d Cir. 1990).

To determine whether it may exercise personal jurisdiction over a non-domiciliary, a district court engages in a two-part analysis.  First, the court must determine whether jurisdiction exists under the law of the forum state, here, New York.  Second, the court must determine whether the exercise of jurisdiction under state law satisfies federal due process requirements.  Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez, 171 F.3d 779, 784 (2d Cir. 1999); Marsalis v. Schachner, No. 01 Civ. 10774 (DC), 2002 WL 1268006, at *2 (S.D.N.Y. June 6, 2002).

C.P.L.R. § 302(a)(1) provides, in pertinent part, that a court in New York may exercise jurisdiction "over any non-domiciliary . . . who in person or through an agent[ ] transacts any business within the state or contracts anywhere to supply goods or services in the state" if the cause of action arises from such activity.  N.Y. C.P.L.R. § 302(a)(1) (McKinney 1992); see also N.Y. C.P.L.R. § 302(a)(2), (3) (McKinney 1992); Hypoxico, Inc. v. Col. Altitude Training LLC, No. 02 Civ. 6191

(JGK), 2003 WL 21649437, at *2 (S.D.N.Y. July 14, 2003) (citing
Agency Rent A Car Sys., Inc. v. Grand Rent A Car Corp., 98 F.3d
25, 29 (2d Cir. 1996)).  A defendant transacts business under §
302(a)(1) when it "'purposefully avails itself of the privilege
of conducting activities within [New York], thus invoking the
benefits and protections of its law.'"  Family Internet, Inc. v.
Cybernex, Inc., No. 98 Civ. 0637 (RWS), 1999 WL 796177, at *5
(S.D.N.Y. Oct. 6, 1999) (quoting Viacom Int'l, Inc. v. Melvin
Simon Prods., 774 F. Supp. 858, 862 (S.D.N.Y. 1991)).  Whether
the defendant has engaged in some purposeful activity in New York
in connection with the matter in controversy is determined by the
totality of the circumstances.  Id. at *5 (citing
Longines-Wittnauer Watch Co. v. Barnes & Reinecke, Inc., 15
N.Y.2d 443, 457 (1965)).

     The "fiduciary shield" doctrine does not apply in New
York to insulate a corporate officer from long-arm jurisdiction
for acts taken on the corporation's behalf.  Deer Stags, Inc. v.
Garrison Indus., Inc., No. 00 Civ. 0267 (DC), 2000 WL 1800491, at
*3 (S.D.N.Y. Dec. 7, 2000) (citing Kreutter v. McFadden Oil
Corp., 71 N.Y.2d 460, 467 (1988)).  But "the fact that New York
does not adopt the fiduciary shield doctrine does not mean that a
corporate officer is automatically subject to long-arm
jurisdiction."  Packer v. TDI Sys., Inc., 959 F. Supp. 192, 199
n.6 (S.D.N.Y. 1997).  Plaintiffs still must show either that
"[Thorkelson's] own contacts with the state satisfy the statute's
requirements or that the Court's jurisdiction over [CanadaDrugs]

should be imputed to [Thorkelson] under an agency theory."
Hypoxico, Inc., 2003 WL 21649437, at *3 (citing Family Internet,
1999 WL 796177, at *5).

Merck has failed on both grounds.  First, although the
complaint broadly alleges that "[d]efendants have transacted and
do transact business in the State of New York" (CanadaDrugs
Compl. ¶ 8), it does not allege that Thorkelson has transacted
business in New York in his individual capacity.  Instead,
plaintiffs argue only that Thorkelson, as CEO and founder of
CanadaDrugs, "should be presumed to be intimately involved in
directing the infringing activities."  (Pl. 12(b)(2) Opp. Mem. at
5).  Plaintiffs also argue that Thorkelson was the registered
owner of the site and intentionally induced the company's
infringement.  (Id. at 6-7).  But plaintiffs fail to allege any
specific actions on the part of Thorkelson, and a presumption is
not enough.

In contrast, Thorkelson submits a declaration in which
he admits that the site had been registered in his name, but
asserts that the Canada Drugs.com Partnership is the site's
owner.  (Thorkelson Decl. ¶ 11).[11]  Although a plaintiff's
allegations are ordinarily accepted as true at the pleadings
stage, on a motion to dismiss for lack of jurisdiction, where

_____

[11]    In determining whether jurisdiction over a defendant
has been established, the Court may consider matters outside the
pleadings without converting the motion to dismiss into a motion
for summary judgment.  See Bensusan Rest. Corp. v. King, 937 F.
Supp. 295, 298 (S.D.N.Y. 1996), aff'd, 126 F.3d 25 (2d Cir.
1997).

"defendant rebuts plaintiffs' unsupported allegations with direct, highly specific, testimonial evidence regarding a fact essential to jurisdiction -- and plaintiffs do not counter that evidence -- the allegation may be deemed refuted." Schenker v. Assicurazioni Genereali S.p.A., Consol., No. 98 Civ. 9186 (MBM), 2002 WL 1560788, at *3 (S.D.N.Y. July 15, 2002) (citations omitted). Here, plaintiffs have failed to make sufficient jurisdictional allegations to make a prima facie showing of jurisdiction based on Thorkelson's contacts with New York. See Bradley v. Staubach, No. 03 Civ. 4160 (SAS), 2004 WL 830066, at *5 (S.D.N.Y. Apr. 13, 2004) (finding no basis for jurisdiction over CEO defendant where complaint contained nothing but conclusory allegations as to his acts in an individual capacity); Hsin Ten Enter. USA, Inc. v. Clark Enters., 138 F. Supp. 2d 449, 456-57 (S.D.N.Y. 2000) (finding personal jurisdiction over sole proprietorship but dismissing complaint against individual sole proprietor for insufficient jurisdictional allegations).

Second, plaintiffs also fail to establish jurisdiction based on an agency theory. Under this theory, "'plaintiff[s] need not establish a formal agency relationship.'" Bradley, 2004 WL 830066, at *4 (quoting Kreutter, 71 N.Y.2d at 467). "At the heart of this inquiry is whether the out-of-state corporate officers were 'primary actor[s] in the transaction in New York' that gave rise to the litigation, and not merely 'some corporate employee[s] . . . who played no part in' it." Karabu Corp. v. Gitner, 16 F. Supp. 2d 319, 323 (S.D.N.Y. 1998) (quoting Retail

<u>Software Servs., Inc. v. Lashlee</u>, 854 F.2d 18, 22 (2d Cir. 1988)).  Plaintiffs have not alleged that Thorkelson was a "primary actor" in the matters in question; control cannot be shown based merely upon a defendant's title or position.  <u>In re Sumitomo Copper Litig.</u>, 120 F. Supp. 2d 328, 336 (S.D.N.Y. 2000) (quoting <u>Karabu Corp.</u>, 16 F. Supp. 2d at 324); <u>see also</u> <u>Kinetic Instruments, Inc. v. Lares</u>, 802 F. Supp. 976, 984 (S.D.N.Y. 1992) (noting that "a corporation is not necessarily the agent of a corporate officer simply by virtue of the officer's position with the company").  By grouping Thorkelson's activities in with the alleged conduct of CanadaDrugs, Merck provides no basis for the Court to determine whether Thorkelson was a "primary actor" "orchestrat[ing] the allegedly tortious conduct, or [whether he was] named in the complaint simply because [his] name[] appear[s] at the top of [CanadaDrug]'s masthead."  <u>Karabu</u>, 16 F. Supp. 2d at 325  (dismissing complaint against individual defendants that was "completely devoid of any factual specificity indicating how each of the six defendants participated in the allegedly tortious conduct or what role they each played").

Nor have plaintiffs alleged sufficient facts to permit the Court to determine whether the exercise of personal jurisdiction over Thorkelson would satisfy the requirements of due process.  <u>See</u> <u>id.</u> at 325; <u>accord</u> <u>Ontel Prods. v. Project Strategies Corp.</u>, 899 F. Supp. 1144, 1149 (S.D.N.Y. 1995) ("It is not enough that [defendant], as President of P.S.C., likely possessed authority to direct all the activities that gave rise

to this suit.  If that were the case, the president of every company would be subject to jurisdiction in New York based on activities with which he or she had no personal involvement and over which he or she exercised no decisionmaking authority."). The Court is unable to assess "whether the 'quality and nature' of the defendant's activity is such that it is 'reasonable' and 'fair' to require him to conduct his defense in th[is] State." Kulko v. Superior Court, 436 U.S. 84, 92 (1978) (quoting Int'l Shoe Co. v. Washington, 326 U.S. 310, 316-17 (1945)). Accordingly, the claims against Thorkelson must be dismissed.

## CONCLUSION

For the foregoing reasons, defendants' motions are granted in part and denied in part.  Plaintiffs' claims against Thorkelson are dismissed in all respects for lack of personal jurisdiction.  Plaintiffs' trademark and unfair competition claims against CrossBorder are dismissed.  The trademark claims and unfair competition claims against CanadaPharmacy, MedCenter, and Universal based on their use of the mark in connection with search engines are dismissed.  The false advertising and unfair competition claims against all defendants based on the alleged implication of governmental approval of the importation of defendants' products into the United States (including the claims based on defendants' sale of Zocor) are dismissed.  These rulings apply to the claims under both state and federal law. Defendants' motions to dismiss are denied with respect to the remaining claims.

The parties shall appear for a pretrial conference on April 21, 2006, at 11:00 a.m., in Courtroom 11A of the United States Courthouse, 500 Pearl Street, New York, New York.

SO ORDERED.

Dated: New York, New York
March 30, 2006

DENNY CHIN
United States District Judge

**APPEARANCES:**

For Plaintiffs:

        FITZPATRICK, CELLA, HARPER & SCINTO
           By:  Robert L. Baechtold, Esq.
              Pasquale A. Razzano, Esq.
              Nina Shreve, Esq.
              Peter Shapiro, Esq.
        30 Rockefeller Plaza
        New York, NY   10112

For Defendants:

        R. KUNSTADT, P.C.
        Attorneys for Mediplan Health Consulting, Inc.,
           North Pharmacy Inc., PPI Pivotal Partners
           Inc., and Universal Drug Store LTD
           By:  Robert M. Kunstadt, Esq.
              Ilaria Maggioni, Esq.
        729 Seventh Avenue, 4th Floor
        New York, NY   10019

        MORGAN & FINNEGAN, L.L.P.
        Attorneys for Canada Drugs.com Partnership and
          Kris Thorkelson
           By:  John F. Sweeney, Esq.
               Seth J. Atlas, Esq.
               Kathleen E. McCarthy, Esq.
        3 World Financial Center
        New York, NY   10281

        ROTHWELL FIGG ERNST & MANBECK
        Attorneys for Medcenter Canada Inc., Glassey
           Consulting, and Alex Glassey
           By:  Steven Lieberman, Esq.
               Minaksi Bhatt, Esq.
               Lisa N. Phillips, Esq.
        1425 K Street, N.W., 8th Floor
        Washington, DC   20005

        DARBY & DARBY P.C.
        Attorneys for Total Care Pharmacy Ltd. and Dave
          Robertson
           By:  Andrew Baum, Esq.
               David K. Tellekson, Esq.
               Justin Kayal, Esq.
               Robert L. Jacobson, Esq.
        805 Third Avenue
        New York, NY   10022